# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GEORGE T.,[1] | : | Case No. 3:23-cv-00084 |
| Plaintiff, | : | |
| | : | District Judge Michael J. Newman |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[2]

Plaintiff filed an application for Disability Insurance Benefits in October 2020. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, it is

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] See 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

recommended that the Court REVERSE the Commissioner's decision and REMAND for further proceedings.

## I. BACKGROUND

Plaintiff asserts that he has been under a disability since October 10, 2019. At that time, he was forty-five years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 39-60), Plaintiff's Statement of Errors ("SE," Doc. No. 7), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1: Plaintiff has not engaged in substantial gainful activity since October 10, 2019, the alleged onset date.
>
> Step 2: He has the severe impairments of status post cervical hemilaminectomy/decompression/foraminotomy and discectomy, osteoarthritis, radiculopathy, mild right median neuropathy, and obesity.

4

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[O]ccasionally reaching overhead to the left, and occasionally reaching overhead to the right. For all other reaching he can reach frequently to the right. He can handle items occasionally with the right hand. He has fingering limitations occasionally with the right hand. [Plaintiff] has feel limitations occasionally on the right. [Plaintiff] can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, and crawl frequently. [Plaintiff] can never work at unprotected heights, around moving mechanical parts and can never operate a motor vehicle. [Plaintiff] is limited to a loud noise environment."

He is unable to perform any of his past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 6-2 at PageID 44-54.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 54.)

## IV. LAW AND ANALYSIS

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ "relied only on evidence from the end of the alleged disability period." (SE, Doc. No. 7 at PageID 2000.) Plaintiff also contends that the ALJ reversibly erred by "failing to consider a closed period when the administrative law judge described significant recovery (through surgical and other intervention) over the course

5

of the alleged disability period . . . ." (*Id.*) Concluding that these assertions are well-taken, the undersigned recommends that the ALJ's decision be reversed and remanded.

### A. The ALJ Failed To Consider Evidence From The Entire Relevant Time Period When Formulating The RFC.

A claimant's RFC describes the most that he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 SSR LEXIS 5, *5-6 (July 2, 1996).

The ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022 U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *affirmed by* 2022 U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS 140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)).

Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249.

Here, although the ALJ stated that he considered the "overall evidence," he also emphasized that Plaintiff's condition improved after surgical intervention, massage therapy, and occupational therapy. (Decision, Doc. No. 6-2 at PageID 48-52.) The ALJ reasoned that because Plaintiff's condition had improved, he did not need to include more restrictive limitations in the RFC. (*Id.*) Because the ALJ based the RFC upon evidence from the end of the relevant time period, he plainly did not base it "upon the record in its entirety." *Rogers*, 486 F.3d at 249. Therefore, the RFC is not supported by substantial evidence and reversal is required.

The ALJ provided a detailed summary of the medical evidence during the relevant time period. (Decision, Doc. No. 6-2 at PageID 48-50.) After Plaintiff sustained a work-related injury on October 16, 2019, he underwent four surgeries during the following fourteen months. Doctors performed a right elbow lateral epicondyle revision surgery on December 12, 2019, and an anterior cervical decompression and reconstruction with two-level artificial disc replacement at C5-C6 and C6-C7 on December 19, 2019. (*Id.* at PageID 49.) Plaintiff experienced only temporary improvement of his symptoms after those procedures. (*Id.*) After a CT scan showed persistent moderate to severe C6-C7 right foraminal stenosis secondary to uncinate and facet arthropathy, Plaintiff underwent a right C6 hemilaminotomy with C7 nerve root decompression and foraminotomy on July 21, 2020. (*Id.*) Plaintiff again experienced only temporary improvement. Moreover, an October 2020 EMG showed right C7 radiculopathy and mild right median neuropathy at

7

the wrist affecting primarily the motor component of the nerve. (*Id.*) Plaintiff underwent his fourth surgery—a revision of the right C6-C7 hemilaminectomy and decompression with a fusion of the C6-C7 levels—on December 22, 2020. (*Id.*)

After December 2020, the evidence showed consistent improvement in Plaintiff's condition. (Decision, Doc. No. 6-2 at PageID 49-50.) For example, Plaintiff reported overall improvement in his hand and neck symptoms during a surgical follow-up visit in April 2021, although the examination showed some paraspinal tenderness, positive Tinel's and Phalen's signs, and positive median nerve compression testing. (*Id.* at PageID 50.) Plaintiff underwent "a near full course" of massage therapy in the summer of 2021, and his July 2021 physical examination was essentially normal. (*Id.*) During a September 2021 surgical follow-up visit, Plaintiff exhibited "painful decreased range of motion" but the examination also showed a normal gait, normal extremity sensation, normal upper extremity muscle testing and normal reflexes. (*Id.*) The ALJ relied on the September 2021 visit to conclude that "[t]his evidence supports the reduced light residual functional capacity outlined above." (*Id.*)

When the ALJ evaluated Plaintiff's subjective complaints while formulating the RFC, he relied on evidence of Plaintiff's improved condition to find that those complaints were inconsistent with the overall evidence. (Decision, Doc. No. 6-2 at PageID 50-51.) The ALJ explained:

> Specifically, while [Plaintiff] reported symptoms including neck pain and right finger numbness that are aggravated by manipulative activities and range of motion of the neck, [Plaintiff] also admitted he is able to exercise at the gym regularly, live alone, attend to personal care needs independently and drive a car (Hearing Testimony). Moreover, as detailed above, physical

8

> examinations revealed non-antalgic gait, normal heel-and-toe walk, 5/5 muscle testing, normal reflexes and intact sensation (13F/8, 12-14, 16; 22F/4-5). [Plaintiff] has been prescribed medication, underwent multiple injections and surgeries and participated in physical therapy and massage therapy to alleviate his symptoms. Evidence indicates that [Plaintiff's] symptoms of weakness in his hand and neck pain greatly improved following surgery and massage for headaches and neck pain also seemed to help (13F/6; 22F/7). Occupational therapy records from calendar year 2021 indicate an overall improvement in [Plaintiff's] symptoms following surgery (23F/2). Specifically, in June 2021, [Plaintiff] reported he felt the sensation in his right fingers were improving (20F/1-2). Overall, [Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms are not supported by medical records and other evidence to the extent alleged and are given partial weight.

(*Id.*) All of the evidence cited by the ALJ describes Plaintiff's condition after December 2020—well over a year after the alleged disability onset date.

For example, Plaintiff's testimony at the December 2021 hearing primarily described his condition ***at that time***, over two years after the alleged disability onset date and one year after Plaintiff's fourth surgery. Although the ALJ began his questioning by confirming that Plaintiff had undergone four surgeries since the October 2019 accident, he then stated: "[W]ell, let's just talk about how you're doing ***right now***. Limitations that you have ***right now*** . . . ." (AR, Doc. No. 6-2 at PageID 105) (emphasis added.) In response, Plaintiff described his current neck and right hand symptoms and limitations. (*Id.* at PageID 105-06.) When the ALJ asked Plaintiff how much weight he could lift, Plaintiff stated that he lifted some weight "when [he] was going to rehab[ilitation]" and was "go[ing] to the gym ***now*** trying to build strength back." (*Id.* at PageID 106) (emphasis added.) And when the ALJ asked Plaintiff to describe his daily activities, he specifically asked about ***current*** activities: "Now I'm going to ask you about some of

9

your daily activities, I'll use yesterday as an example." (*Id.* at PageID 114.) Plaintiff responded that he "got on [his] computer, checked [his] emails, took a shower, went to the gym, come [sic] back and took another shower, watched some TV, took a nap and then went to dinner with [his] friends and then come [sic] home and relaxed and fell asleep." (*Id.* at PageID 115.)

Similarly, the ALJ relied on recent medical evidence to discount Plaintiff's symptom severity allegations. (Decision, Doc. No. 6-2 at PageID 50-51.) The normal physical examinations that the ALJ cited occurred in April and May 2021. (*Id.* at PageID 50) (citing AR, Doc. No. 6-8 at PageID 1201, 1205-06; AR, Doc. No. 6-9 at PageID 1374.) The ALJ also cited to records that were dated between April and August 2021 to explain that Plaintiff's symptoms had greatly improved following surgery, massage, and occupational therapy. (Decision, Doc. No. 6-2 at PageID 50-51) (citing AR, Doc. No. 6-8 at PageID 1199; AR, Doc. No. 6-9 at PageID 1351-52, 1377, 1394.) The ALJ relied on this post-2020 evidence to discount Plaintiff's symptom severity allegations for the entire relevant time period, which began in October 2019.

The ALJ also relied on Plaintiff's improved condition when evaluating the medical opinion evidence and concluding that the RFC allowed for light work. For example, the ALJ agreed with initial reviewer Dr. Torello's opinion that Plaintiff could perform light work, explaining that "a light [RFC] is reasonable given [Plaintiff's] improvement after surgical intervention and range of activities of daily living . . . ." (Decision, Doc. No. 6-2 at PageID 52.) The ALJ did not explain how a light RFC would be reasonable earlier during the relevant time period, when Plaintiff underwent and

10

recovered from four surgeries. And although the ALJ found that "Dr. Torello fails to account for [Plaintiff's] manipulative limitations due to radiculopathy and mild right median neuropathy (25F/565)," he relied on an examination from April 2021 to identify these limitations. (*Id.*) (citing AR, Doc. No. 6-11 at PageID 1989.) The ALJ did not consider what limitations applied during the earlier part of the relevant time period. Similarly, the ALJ relied only on more recent evidence when evaluating the opinion of State agency medical consultant Dr. Mutchler. (Decision, Doc. No. 6-2 at PageID 52.)

The ALJ's concluding explanation regarding the RFC highlights his overreliance on Plaintiff's improved, post-surgical condition:

> [T]he objective medical records, medical opinions, as well as the subjective complaints of [Plaintiff] support the residual functional capacity outlined above. Although the medical evidence of record confirms [Plaintiff's] diagnoses, ***the conditions have produced no greater restrictions than those identified and have been managed with conservative treatment***. Therefore, [Plaintiff] is able to sustain work as described above.

(Decision, Doc. No. 6-2 at PageID 52) (emphasis added.) These statements are plainly inaccurate given that Plaintiff underwent ***four surgeries*** related to his neck and upper extremity complaints over a period of fourteen months after his October 2019 work injury. (Decision, Doc. No. 6-2 at PageID 49; *see also* AR, Doc. No. 6-7 at PageID 369, 432, 476; AR, Doc. No. 6-8 at PageID 1095.) The ALJ did not explain how the evidence prior to 2021 permitted Plaintiff to perform light work. Nor is it reasonable to describe four surgeries as "conservative treatment." *Palaghe v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 56355, *46 (E.D. Mich. Apr. 28, 2016) (finding "hollow and false" an ALJ's conclusion that surgical spinal repair was "essentially routine and conservative in

11

nature"). Conversely, Plaintiff's treatment in 2021—massage therapy, physical therapy, occupational therapy, and trigger point injections—could be considered conservative. (*See, e.g.,* AR, Doc. No. 6-8 at PageID 1222, 1139, 1144, 1148, 1154, 1174; AR, Doc. No. 6-9 at PageID 1276, 1377, 1393-94.)

Ultimately, the ALJ must "build an accurate and logical bridge between the evidence and his conclusion." *Amber S. v. Comm'r of the SSA,* No. 2:22-cv-2240, 2023 U.S. Dist. LEXIS 171553, at *12 (S.D. Ohio Sept. 26, 2023) (Silvain, M.J.) (citing *Fleischer v. Astrue*, 77 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). *See also Julie P. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4170, 2022 U.S. Dist. LEXIS 116490, at *13 (S.D. Ohio June 30, 2022) (Jolson, M.J.) (citation omitted), *report and recommendation adopted*, No. 2:21-cv-4170, 2022 U.S. Dist. LEXIS 138572 (S.D. Ohio Aug. 3, 2022) (Morrison, D.J.), *aff'd*, *Pettit v. Comm'r of Soc. Sec.*, No. 22-3826, 2023 U.S. App. LEXIS 10964 (6th Cir. 2023); *Alevras v. Colvin,* No. 13 C 8409, 2015 U.S. Dist. LEXIS 59394, *12 (N.D. Ill. May 6, 2015) ("merely summarizing medical evidence is not the same as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled") (citation omitted).

The ALJ's decision fell short of this standard because he did not build a logical bridge between the evidence and his conclusions. Instead, he relied on Plaintiff's improved condition to formulate an RFC for a reduced range of light work. By limiting his RFC analysis to evidence from the end of the relevant time period, the ALJ plainly did not account for evidence from the entire relevant time period. Therefore, the RFC assessment is not supported by substantial evidence and remand is warranted.

12

### B. The ALJ Failed to Consider Whether a Closed Period of Disability Was Warranted.

The ALJ also erred by failing to consider whether a closed period of disability benefits was warranted.

A claimant must meet the twelve-month durational requirement before he can be found disabled. 42 U.S.C. § 423(d)(1)(A). The Sixth Circuit has held that while "[t]he Act itself does not provide for a closed period of benefits . . . we think it clear that such a closed period of benefits may be awarded." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). Thus, a claimant who satisfies the twelve-month durational requirement "may be entitled to benefits from the time his disability commences until such time as the disability ceases." *Lang v. Sec'y of Health & Hum. Servs.*, No. 88-1561, 1989 WL 40188, at *2 (6th Cir. 1989) (citing *Howse v. Heckler*, 782 F.2d 626 (6th Cir.1986)).

An ALJ need not use any "magic words" to indicate that he has considered whether a closed period of disability is warranted. *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10-CV-1571, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012). But the ALJ must nevertheless consider "every period during which [a claimant] may have been disabled." *Cash v. Comm'r of Soc. Sec.,* No. 3:16-CV-175, 2017 WL 3473813, at *4 (S.D. Ohio Aug. 14, 2017) (Newman, M.J.) (citation omitted), *report and recommendation adopted*, No. 3:16-cv-175, 2017 WL 3769371 (S.D. Ohio Aug. 29, 2017) (Rice, D.J.).

Here, given the ALJ's heavy reliance on evidence showing that Plaintiff's condition had improved, it is apparent that he failed to consider whether Plaintiff might be entitled to a closed period of disability. This error, too, warrants reversal.

13

Plaintiff cites a recent case in which this Court reversed an ALJ's decision because the ALJ "failed to consider a closed period after medical intervention had significantly improved [Plaintiff's] condition." (SE, Doc. No. 7 at PageID 2009) (citing *Michael S. v. Comm'r of the SSA*, No. 3:21-cv-00336, 2023 WL 2642940, at *4 (S.D. Ohio Mar. 27, 2023) (Gentry, M.J.).) Although some of the facts in *Michael S.* are distinguishable,[3] the Court agrees that in both that case and this case, the ALJ failed to consider a closed period of disability. This error, too, warrants reversal. *Cash*, 2017 WL 3473813, at *4.

Defendant argues that an ALJ's "detailed consideration of the evidence from the entire relevant period" satisfies the requirement to consider a closed period. (Mem. In. Opp., Doc. No. 9 at PageID 2027) (citing *Lawson v. Comm'r of Soc. Sec.*, No. 1:20-cv-324, 2021 WL 2659176, at *1 (S.D. Ohio June 29, 2021) (Bowman, M.J.), *report and recommendation adopted, Lawson v. Comm'r of Soc. Sec.*, No. 1:20-cv-324, 2021 WL 3663649, at *1 (S.D. Ohio Aug. 18, 2021) (McFarland, D.J.); *Marks v. Comm'r of Soc. Sec.*, No. 2:20-cv-3923, 2021 WL 2217072, at *8 (S.D. Ohio June 2, 2021) (Jolson, M.J.), *report and recommendation adopted*, No. 2:20-cv-3923, 2021 WL 5316758 (S.D. Ohio Nov. 16, 2021) (Marbley, Chief D.J.).)

Both cited cases are distinguishable. The *Lawson* court found that the ALJ's "analysis of the entirety of the record – including but not limited to the proposed 'closed

---

[3] In *Michael S.*, the ALJ provided a one-sentence summary of objective evidence regarding the plaintiff's mental impairments from the November 2015 application date through March 2018. 2023 WL 2642940, at *4. Because the one-sentence summary did not address significant evidence that supported the plaintiff's mental health complaints, this Court held that the RFC was not supported by substantial evidence. *Id.* at *4. Here, by contrast, the ALJ provided a detailed summary of the medical evidence for the entire relevant time period since the October 2019 alleged disability onset date. (Decision, Doc. No. 6-2 at PageID 49-50.)

period,'" was well-supported. 2021 WL 2659176, at *5. The *Lawson* court held that "[b]ecause it is clear that the ALJ considered all of the medical evidence that related to the closed period, his conclusion that Plaintiff was not disabled clearly includes a finding that she was not entitled to a closed period of disability." *Id.* at *6. Similarly, the *Marks* court found it "clear that the ALJ considered all of the medical evidence introduced that related to the closed period," and so held that the ALJ's conclusion that the plaintiff was not disabled included a finding that the plaintiff was not entitled to a closed period of disability. 2021 WL 2217072, at *8.

Here, by contrast, the Court has found that the ALJ did not consider all of the medical evidence relating to the closed period. To the contrary, the ALJ in this case did not analyze or consider all of the relevant evidence when he formulated the RFC. *See Amber S*, 2023 U.S. Dist. LEXIS 171553, at *12; *Alevras*, 2015 U.S. Dist. LEXIS 59394, *12. Therefore, *Lawson* and *Marks* are inapposite.

Accordingly, the undersigned concludes that the ALJ erred by failing to consider whether a closed period of disability is warranted.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

15

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

      A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the time period prior to April 2021, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

    1.     Plaintiff's Statement of Errors (Doc. No. 7) be GRANTED;

    2.     The Court REVERSE the Commissioner's non-disability determination;

    3.     No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.     This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.     This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).